## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Danielle Forman, Nichole Georg and Cindy Haney, individually and as representatives of a Class of Participants and Beneficiaries on Behalf of the TriHealth 401(k) Retirement Savings Plan; <br><br> Plaintiffs, <br><br> v. <br><br> TriHealth, Inc. and the TriHealth 401(k) Retirement Savings Plan Retirement Committee; <br><br> Defendants. | Case No. 1:19-cv-613 <br><br> J̲udge: Timothy A. Black <br><br> AMENDED CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) |

NOW COME Plaintiffs Danielle Forman, Nichole Georg and Cindy Haney, individually and as representatives of a Class of Participants and Beneficiaries on Behalf of the TriHealth 401(k) Retirement Savings Plan, and assert to the best of their knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1.      "ERISA's essential remedial purpose" is "to protect the beneficiaries of private pension plans." *Nachwalter v. Christie*, 805 F.2d 956, 962 (11th Cir. 1986). *See also Sweda v. Univ. of Pa.*, 923 F.3d 320, 327 (3d Cir. 2019) ("ERISA furthers 'the national public interest in safeguarding anticipated employee benefits' upon which individuals'

livelihoods depend.").[1] To advance that essential purpose, ERISA places fiduciary duties on persons responsible for administering pension plans that are the "highest known to law." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003). ERISA's duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A). Further, ERISA's duty of prudence requires a fiduciary to discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

2.      Specifically, the law is settled that ERISA fiduciaries have a duty to evaluate fees and expenses when selecting investments *as well as* a continuing duty to monitor fees and expenses of selected investments and remove imprudent ones. *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015) ("a trustee has a continuing duty to monitor trust investments and remove imprudent ones" where plaintiff alleged defendants imprudently offered higher-priced funds when materially identical lower-priced mutual funds were available); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (claim that fiduciary selected higher-cost investments when identical lower-cost options were available stated claim for breach of fiduciary duty). *See also e.g.,*

_____

[1] Unless indicated otherwise, cited and quoted cases are omitted.

29 U.S.C. §1104(a)(1)(A) (fiduciary duty includes "defraying reasonable expenses of administering the plan"); 29 C.F.R. § 2550.404a-1(b)(i) (ERISA fiduciary must give "appropriate consideration to those facts and circumstances" that "are relevant to the particular investment"). Indeed, a fiduciary's duty to evaluate and monitor investment fees and expenses is "'derived from the common law of trusts,'" a body of law that defines "the contours of an ERISA fiduciary's duty…" *Tibble*, 135 S. Ct. at 1828. Under trust law, a trustee is to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." Restatement (Third) Of Trusts § 90(c)(3); *see also id.* § 88, cmt. a ("Implicit in a trustee's fiduciary duties is a duty to be cost-conscious."). And it is for good reason that ERISA requires fiduciaries to be cost-conscious:

> Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan," Tibble, 135 S. Ct. at 1826, by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees,

*Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019).

**3.** Defendants TriHealth, Inc. and the TriHealth 401(k) Retirement Savings Plan Retirement Committee are ERISA fiduciaries as they exercise discretionary authority and/or discretionary control over the 401(k) defined contribution pension plan – known as the TriHealth 401(k) Retirement Savings Plan (the "Plan", attached as Exhibit A).

**4.** For 17 of the mutual funds share classes available within the Plan, a different share class from that selected by the Plan that charged lower fees, and

3

consistently achieved higher returns, is available from the same issuer. For all seven of the remaining investment options, Defendants could have chosen funds of similar investment style that were less expensive and more productive than what they chose. For every year between 2013 and 2017, the administrative fees charged to Plan participants are greater than the fees of more than 90 percent of comparable 401(k) plans, when fees are calculated as cost per participant or when fees are calculated as a percent of total assets.

5. These investment options and unreasonable fees cannot be justified. Their presence documents more than simply sloppy business practices; their presence are the results of a breach of the fiduciary duties owed by TriHealth, Inc. and the TriHealth 401(k) Retirement Savings Plan Retirement Committee to Plan participants and beneficiaries. Prudent fiduciaries of 401(k) plans continuously monitor investment options and administrative fees against applicable benchmarks and peer groups to identify unreasonable and unjustifiable investment decisions and investment fees. To remedy, Plaintiffs bring this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) to enforce the defendants' liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from both defendants' breaches of fiduciary duty.

## JURISDICTION AND VENUE

6. This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

7. Venue is appropriate in this district because the Defendants reside or may be found in this judicial district within the meaning of 29 U..S.C. § 1132(e)(2).

4

**8.**     In conformity with 29 U.S.C. §1132(h), Plaintiffs served the original

Complaint by certified mail on the Secretary of Labor and the Secretary of the

Treasury.

## PARTIES

**9.**     Plaintiff Danielle Forman lives in and is a Kings Mills, Ohio citizen and

during the Class period, was a participant in the Plan under 29 U.S.C. § 1002(7).

**10.**     Plaintiff Nichole Georg lives in and is a citizen of Loveland, Ohio and,

during the Class period, was a participant in the Plan under 29 U.S.C. § 1002(7).

**11.**     Plaintiff Cindy Haney lives in and is a citizen of Batavia, Ohio and, during

the Class period, was a participant in the Plan under 29 U.S.C. § 1002(7).

**12.**     The named Plaintiff and all participants in the Plan suffered financial

harm as a result of the imprudent or unreasonable investment and fee options in the

Plan. Defendants' selection and retention of those options resulted in higher

administrative fees than the Plan and its participants and beneficiaries should have paid

as well as poorer net investment performance, had defendants satisfied their fiduciary

obligations. All participants and the Plan continue to be harmed by the ongoing

inclusion of these investment options.

**13.**     TriHealth, Inc. ("TriHealth") is a company with its principal headquarters

located at 625 Eden Park Drive, Cincinnati, Ohio. TriHealth is a citizen of the state of

Ohio. In this Complaint, "TriHealth" refers to the named defendant and all parent,

subsidiary, related, predecessor, and successor entities to which these allegations

pertain. TriHealth is the Plan sponsor of the TriHealth, Inc. Retirement Plan. Among

5

other things, TriHealth has authority over the control and management of the operation and administration of the Plan (TriHealth 401(k) Retirement Savings Plan, § 22.2(a)(1)).

14.     The TriHealth 401(k) Retirement Savings Plan Retirement Committee ("Retirement Committee") is appointed by the TriHealth Board of Directors or its President to manage the Plan. Among other things, the Retirement Committee is authorized to make final decisions concerning investment options and has responsibility to manage and monitor the performance of investment options (TriHealth 401(k) Retirement Savings Plan, § 13.3(a)-(n). In this Complaint, "Retirement Committee" refers to the named defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain.

15.     The Plan is a "defined contribution" pension plan under 29 U.S.C. § 1102(2)(A) and 1002(34), meaning that TriHealth's contribution to the payment of Plan costs is guaranteed but the pension benefits are not.

16.     The Plan is established and maintained under a written document in accord with 29 U.S.C. § 1102(a)(1). The Plan provides for retirement income for eligible TriHealth employees and their beneficiaries.

## ERISA's FIDUCIARY STANDARDS

17.     ERISA imposes strict fiduciary standards of duty and loyalty and prudence on Defendants as fiduciaries to the Plan. 29 U.S.C. § 1104(a)(1) provides in relevant part:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
        (A) for the exclusive purpose of:

6

(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan; [and]
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

18.     With certain exceptions not relevant here, 29 U.S.C. § 1103(c)(1) provides

in relevant part:

the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

19.     29 U.S.C. § 1109 provides in relevant part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

20.     Under ERISA, fiduciaries that exercise any authority or control over plan

assets, including the selection of plan investments and service providers, must act

prudently and for the exclusive benefit of participants in the plan, and not for the

benefit of third parties including service providers to the plan such as recordkeepers

and those who provide investment products. Fiduciaries must ensure that the amount

of fees paid to those service providers is no more than reasonable. DOL Adv. Op. 97-

15A; DOL Adv. Op. 97-16A; *see also* 29 U.S.C. §1103(c)(1) (plan assets "shall be held for

the exclusive purposes of providing benefits to participants in the plan and their

beneficiaries and defraying reasonable expenses of administering the plan").

**21.** "[T]he duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996); *Katsaros v. Cody*, 744 F.2d 270, 279 (2nd Cir. 1984) (fiduciaries must use "the appropriate methods to investigate the merits" of plan investments). Fiduciaries must "initially determine, and continue to monitor, the prudence of each investment option available to plan participants." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007); (emphasis original); *see also* 29 C.F.R. § 2550.404a-1; DOL Adv. Opinion 98-04A; DOL Adv. Opinion 88-16A. Thus, a defined contribution plan fiduciary cannot "insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them." *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009). Fiduciaries have "a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015).

**22.** "Congress intended the term 'fiduciary' to be construed broadly." *Patten v. N. Trust Co.*, 703 F.Supp.2d 799, 808 (N.D. Ill. 2010). "Although Plan documents may expressly name fiduciaries for certain purposes, a person may also be considered a 'functional fiduciary' if he falls within ERISA's definition of the term. *Id.*, citing, *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 855 (7th Cir. 1997). Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or

8

has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. §1002(21)(A).

The determination of a defendant's fiduciary status is a fact intensive one, making it premature for disposition at the Rule 12(b)(6) dismissal stage.

23. The Retirement Committee is expressly named by the Plan as fiduciary responsible for managing the investments options of the Plan. (Ex. A, § 22.2(e).)

24. As Retirement Committee, however, serves at the pleasure of the Sponsor, *i.e.*, the Board of Directors of TriHealth, which has sole discretion to appoint and/or remove Retirement Committee members. (Ex. A, § 13.1). Additionally, TriHealth, through its Board of Directors, has unqualified authority to change the Retirement Committee's responsibilities and duties. (Ex. A, § 13.6). By virtue of its sole discretionary authority to rescind the appointment of the Retirement Committee members, or the power of the Retirement Committee itself, TriHealth necessarily approved the selection and retention of the Plan investment options. By the grant or exercise of (or refusal to exercise) such discretionary authority or responsibility in the control, administration and management of the Plan with respect to Plan expenses, TriHealth meets ERISA's definition of a "functional fiduciary" within the context of the claims asserted here.

25. 29 U.S.C. § 1132(a)(2) authorizes plan participants to bring a civil action for appropriate relief under 29 U.S.C. § 1109.

9

## THE PLAN

**26.**     At least since 2013, the TriHealth Plan had more than 10,000 participants, and assets exceeding  $100 million.  In 2017, the Plan had 12,168 participants, and over $457 million in assets.  The TriHealth Plan offered about 25 different investment choices to its participants

**27.**     At all relevant times, the TriHealth Plan's fees were excessive when compared with other comparable 401K plans offered by other sponsors that had similar numbers of plan participants, and similar amounts of money under management.  The excessive fees led to lower net returns than participants in comparable 401K plans enjoyed.

**28.**     There are commercially available programs commonly used by financial advisors and plan fiduciaries to analyze plans' performance, comparative costs and so on. The programs require validated information (financial information submitted to the federal government is often incomplete or contains errors). The program used for the analysis below contains validated financial information from more than 55,000 financial plans of all types. This benchmarking analysis  is of the type employed by fiduciaries and financial advisors to determine the productivity and efficiency of financial programs and is appropriately used here.

**29.**     A benchmarking analysis of the type often employed by fiduciaries and financial advisors shows that the administrative fees charged to Plan participants is greater than over 90 percent of its comparator fees when fees are calculated as cost per participant, or as a percent of total assets.  In 2017, the Plan's expenses amounted to

.86% of assets under management, or $328.01 per participant. This compared unfavorably to the mean among 26 comparator plans with more than 10,000 participants of $165.53 per participant, and .44% of assets under management. Similarly, among a per group of 22 Plans with an asset range between $250 million and $500 million, the mean expenses were .41% of assets under management. Comparisons in prior year show similar variances between the TriHealth Plan and comparator groups, with the TriHealth Plan always more costly to participants.

30. These excessive fees cannot be justified. An examination of the investment options the Plan fiduciaries chose, and available alternatives they either did not consider or did not choose, provides telling examples of why they breached their fiduciary duties.

31. The Plan Fees that follow are expressed as a percentage of assets under management, or "expense ratio." For example, if the mutual fund share class deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points (or bps).( One basis point is equal to 1/100th of one percent (or 0.01%).The fees deducted from a mutual fund's assets reduce the value of the shares owned by fund investors. As of December 31, 2017, the Plan offered participants share classes from 26 mutual funds in which they could invest. The issuers of 17 of these mutual funds offered different share classes that charged lower fees, and had materially better rates of return. The holders of different share classes held the same investments, and were subject to the same restrictions concerning deposits and withdrawals. The only difference between share classes was that the lower-cost share classes were available

11

only to Plans that had larger investments – but in all cases, TriHealth's Plan, with more than $200 million in assets, was large enough to qualify for the lower cost share class. For example, the T. Rowe Price Class Share Class I have been open to Plans with aggregate assets greater than $1 million since they were created in 2015, a threshold easily met by the Trihealth Plan.   The Plan could have, but did not, offer the lower cost share classes to participants.

| Plan Fund and Share Class | Plan Fee | Plan 3 year annualized return * | Lower Cost Available Share Class | Alternative Share Class and Fee | Alternative Share Class 3 year annualized return* |
|---|---|---|---|---|---|
| Janus Henderson Balanced T (JABAX) | 82 bps | 7.58% | Janus Henderson Balanced I (JABLX) | 64 bps | 7.75% |
| T. Rowe Price 2005 Adv (PARGX) | 79 bps | 5.26% | T. Rowe Price I 2005 I (TRPFX) | 40 bps | 5.61% |
| T. Rowe Price 2010 Adv (PARAX) | 79 bps | 5.63% | T. Rowe Price I 2010 I (TRPAX) | 39 bps | 5.94% |
| T. Rowe Price 2015 Adv (PARHX) | 82 bps | 6.26% | T. Rowe Price I 2015 I (TRFGX) | 43 bps | 6.65% |
| T. Rowe Price 2020 Adv (PARBX) | 86 bps | 7.06% | T. Rowe Price I 2020 I (TRBRX) | 47 bps | 7.42% |
| T. Rowe Price 2025 Adv (PARJX) | 89 bps | 7.70% | T. Rowe Price I 2025 I (TRPHX) | 50 bps | 8.09% |

| T. Rowe Price 2030 Adv (PARCX) | 92 bps | 8.30% | T. Rowe Price I 2030 I (TRPCX) | 53 bps | 8.67% |
|---|---|---|---|---|---|
| T. Rowe Price 2035 Adv (PARKX) | 95 bps | 8.69% | T. Rowe Price I 2035 I (TRPJX) | 56 bps | 9.10% |
| T. Rowe Price 2040 Adv (PARDX) | 97 bps | 9.07% | T. Rowe Price I 2040 I (TRPDX) | 58 bps | 9.47% |
| T. Rowe Price 2045 Adv (PARLX) | 97 bps | 9.15% | T. Rowe Price I 2045 I (TRPKX) | 59 bps | 9.52% |
| T. Rowe Price 2050 Adv (PARFX) | 97 bps | 9.15% | T. Rowe Price I 2050 I (TRPMX) | 59 bps | 9.53% |
| T. Rowe Price 2055 Adv (PAROX) | 97 bps | 9.13% | T. Rowe Price I 2055 I (TRPNX) | 59 bps | 9.54% |
| Columbia Dividend Income Adv (CVIRX) | 71 bps | 10.05% | Columbia Dividend Income Inst2 (CDDRX) | 63 bps | 10.16% |
| Diamond Hill Small-Mid Cap Y (DHMYX) | 81 bps | 5.61% | Diamond Hill Mid Cap Y (DHPYX) | 66 bps | 6.55% |
| Vanguard Extended Market Index Adm. (VEXAX) | 7 bps | 9.99% | Vanguard Extended Market Index Inst. (VIEIX) | 6 bps | 10.01% |
| Vanguard FTSE All-Wld ex-US Idx Admiral (VFWAX) | 11 bps | 1.90% | Vanguard FTSE All-Wld ex-US Idx Instl (VFWSX) | 8 bps | 1.91% |

13

| American Funds Europacific Growth R5 (RERFX) | 53 bps | 6.80% | American Funds Europacific Growth R6 (RERGX) | 49 bps | 6.85% |
|---|---|---|---|---|---|

*As of September 30, 2019.

**32.** The lower cost share classes offered approximately the same savings in earlier years as well.

**33.** As of December 31, 2017, the fees for all but one of the remaining shares of investment funds then available in the Plan were materially more expensive, and the fees' net return materially worse, than available alternatives in the same investment style:

| Plan Mutual Fund | Plan Fee | Plan 3 year annualized Return* | Comparable lower-cost fund | Comparable lower-cost fund fee | Comparable Plan 3 year Annualized Return* |
|---|---|---|---|---|---|
| Dodge & Cox Stock (DODGX) | 52 bps | 7.66% | Vanguard Value Index Fund Investor Shares (VIVAX) | 17 bps | 8.03% |
| Neuberger Berman Socially Rspns. Inst. (NBSLX) | 67 bps | 10.67% | TIAA-CREF Social Choice Eq. Inst. (TISCX) | 17 bps | 12.75% |
| T. Rowe Price Blue Chip Growth (TRBCX) | 70 bps | 13.92% | T. Rowe Price Inst. Large Cap Core Growth (TPLGX) | 56 bps | 14.05% |

| HSBC Opportunity I (RESCX) | 110 bps | 7.13% | Vanguard Mid Cap Growth Inv. (VMGRX) | 36 bps | 9.33% |
|---|---|---|---|---|---|
| Hartford Total Return Bond Y (HABYX) | 46 bps | 2.90% | Voya Intermediate Bond Fund Class I (IICIX) | 35 bps | 3.36% |
| Vanguard Total Bond Market Index I (VBTIX) | 4 bps | 2.69% | Mercer Core Fixed Income Fund Class Y3 (MCFIX) | 3 bps | 2.89% |
| Vanguard Shrt-Term Infl-Prot Sec Idx. Adm (VTAPX) | 6 bps | 0.78% | Fidelity Infl-Prot Bond Index Fund (FIPDX) | 5 bps | 1.62% |
| Templeton Global Bond R6 (FBNRX) | 57 bps | 1.35% | American Funds Capital World Bond R6 (RCWGX) | 52 bps | 1.40% |

* As of September 30, 2019.

**34.** Plaintiffs had no knowledge of defendant's process for selecting investments and monitoring them to ensure they remained prudent. Plaintiffs also had no knowledge of how the fees charged to and paid by TriHealth Plan participants compared to any other funds. Nor did Plaintiffs know about the availability of lower-cost and better-performing (and other essentially identical) investment options that TriHealth did not offer TriHealth provided no comparative information to allow Plaintiffs to evaluate TriHealth's investment options.

**35.** By selecting and retaining the Plan's unreasonably expensive cost investments while failing to adequately investigate the use of lower cost share classes,

offered by the same investment companies, or superior, lower-cost mutual funds from other fund companies that were readily available to the Plan, TriHealth caused Plan participants to lose millions of dollars of their retirement savings through unreasonable fees and poorly performing investments.

## THE OVERCHARGES BREACHED
## DEFENDANTS' FIDUCIARY OBLIGATIONS TO THE PLAN

**36.** The administrative fees of the investment offerings were paid for by the Plan participants. Defendants, as fiduciaries, were responsible for ensuring that these administrative fees and investment options were reasonable.

**37.** A plan's fiduciaries have control over defined contribution plan expenses. The fiduciaries have exclusive control over the menu of investment options to which participants may direct the assets in their accounts. Those selections each have their own fees, which are deducted from the returns that participants receive on their investments.

**38.** At retirement, employees' benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses. Accordingly, unreasonable fees and/or poorly performing investments can impair the value of a participant's account. Over time, even small differences in fees and performance can result in large differences in the amount of savings available at retirement.

**39.** Prudent fiduciaries exercising control over administration of a plan and the selection and monitoring of designated investment alternatives will take steps to

minimize plan expenses by hiring low-cost service providers and by curating a menu of low-cost investment options. *See,* Restatement (Third) of Trusts § 90 cmt. b ("[C]ost-conscious management is fundamental to prudence in the investment function. . . .").

40. In fact, the duty of prudence imposed under 29 U.S.C. § 1104(a)(1)(B) is a codification of the common law prudent investor rule found in trust law.

41. Given the significant variation in total plan fees attributable to plan size, the reasonableness of administrative expenses and investment management expenses should be determined by comparison to other similarly-sized plans. *See,* 29 U.S.C. § 1104(a)(1)(B) (requiring ERISA fiduciaries to discharge their duties in the manner "that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character").

42. A fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants. A plan fiduciary cannot assume that an investment that began as a prudent one will remain so, particularly when the original circumstances change or the investment reveals itself to be deficient. An ERISA fiduciary's investment decisions also must account for changed circumstances and a trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.

43. As illustrated above, the TriHealth's Plan's administrative fees could in many cases be reduced simply by electing a different share class offered by the same issuer, or substantially identical fund from a different issuer, and are consistently well

above the 90th percentile among its comparator peers, regardless whether the comparison is based on cost per participant or percentage of assets.

44.    Prudent fiduciaries of large defined contribution plans must conduct an analysis to determine whether investments will outperform their benchmark net of fees. Prudent fiduciaries then make a reasoned decision as to whether it is in participants' best interest to offer specific funds or share classes for the particular investment style and asset class.

45.    Prudent fiduciaries of defined contribution plans continuously monitor the investment performance of plan options against applicable benchmarks and peer groups to identify underperforming investments. Based on this process, prudent fiduciaries replace those imprudent investments with better-performing and reasonably priced options.

## CLASS ACTION ALLEGATIONS

46.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

47.    In acting in this representative capacity, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> *All participants and beneficiaries of the TriHealth 401(k) Retirement Savings Plan from July 26, 2013 through the date of judgment, excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan.*

18

**48.** The Class includes more than 7,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

**49.** There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because TriHealth owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

•  Who are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

•  Whether the fiduciaries of the Plan breached their fiduciary duties to the Plan;

•  What are the losses to the Plan resulting from each breach of fiduciary duty; and

•  What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

**50.** Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

**51.** Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they are participants in the Plan during the Class period, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

**52.** Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants concerning their discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

**53.** Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**54.** Alternatively, this action may be certified as a class under Federal Rule of Civil Procedure 23(b)(3), if it is not certified under Federal Rule of Civil Procedure 23(b)(1) or (b)(2). A class action is the superior method for fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions.

Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

55. Plaintiffs' attorneys are experienced in complex commercial and class litigation and will adequately represent the Class.

56. The claims brought by the Plaintiffs arise from fiduciary breaches as to the Plans in its entirety and do not involve mismanagement of individual accounts. The claims asserted on behalf of the Plans in this case fall outside the scope of the exhaustion language in individual participants' plans, which is limited to adverse benefit determinations. A plain reading of the purported exhaustion language is that it is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a plan for breaches of fiduciary duty.

57. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Retirement Committee) is the same entity against whom these plan claims are made. So too, policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a plan administrator's decision – doesn't exist here because courts will not defer to plan administrator's legal analysis and interpretation.

## LEGAL CLAIMS
### Count 1 – Breach of Duties of Loyalty and Prudence
### 29 U.S.C. § 1104(a)(1)(A)–(B), (D)

58. Plaintiffs restate the above allegations as if fully set forth.

21

**59.** Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1). Both defendants are responsible for selecting prudent investment options, ensuring that those options charge only reasonable fees, and taking any other necessary steps to ensure that the Plan's assets are invested prudently. Both defendants had a continuing duty to evaluate and monitor the Plan's investments on an ongoing basis and to "remove imprudent ones" regardless of how long a fund has been in the plan. *Tibble v. Edison*, 135 S. Ct. 1823, 1829 (2015).

**60.** 29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon defendants in their administration of the Plan. The scope of the fiduciary duties and responsibilities of defendants include managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, diligence, and prudence required by ERISA. These duties further required defendants to independently assess whether each option was a prudent choice for the Plan. *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007); *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 590, 595–96 (8th Cir. 2009).

**61.** Defendants were directly responsible for ensuring that the Plan's fees were reasonable, selecting investment options in a prudent fashion in the best interest of Plan participants, prudently evaluating and monitoring the Plan's investments on an ongoing basis and eliminating funds or share classes that did not serve the best interest of Plan participants, and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

**62.**     Defendants failed to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's investments and fees in comparison to other investment options. Defendants selected and retained for years as Plan investment options mutual funds with high expenses relative to other investment options that were readily available to the Plan at all relevant times.

**63.**     Defendants failed to engage in a prudent process for monitoring the Plan's investments and removing imprudent ones within a reasonable period. This resulted in the Plan continuing to offer unreasonably expensive funds and share classes compared to equivalent and/or comparable low-cost alternatives that were available to the Plan. Through these actions and omissions, Defendants failed to discharge its duties with respect to the Plan in violation of its fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

**64.**     Defendants failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

**65.**     Defendants are liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the breaches, to restore to the Plan any profits defendants made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition,

defendants are subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and

1132(a)(3).

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury for all issues so triable.

**WHEREFORE**, Plaintiffs, on behalf of the Plan, request the following:

- A declaration that Defendants breached their fiduciary duties as described above;

- An order that requires Defendants make good to the Plan all losses resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- An order for an accounting to determine the amounts that Defendants must make good to the Plan;

- An order removing the fiduciaries who have breached their fiduciary duties;

- An order certifying the Class and appointing each of the named Plaintiffs as a class representative and undersigned counsel as Class Counsel;

- A declaration awarding to Plaintiffs and the Class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1);

- A declaration awarding interest to the extent it is allowed by law; and

- A declaration awarding any other equitable and/or remedial relief the Court deems appropriate.

DATED:  October 17, 2019

> **/s/ Robert R. Sparks**
> **STRAUSS TROY CO., LPA**
> Robert R. Sparks (OH 0073573)
> 150 East Fourth Street
> Cincinnati, OH 45202
> rrsparks@strausstroy.com
> Tel: (513) 621-2120

24

**GREG COLEMAN LAW**
Greg F. Coleman (admitted *pro hac*)
Arthur Stock
Ryan P. McMillan (admitted *pro hac*)
greg@gregcolemanlaw.com
arthur@gregcolemanlaw.com
ryan@gregcolemanlaw.com
800 South Gay Street
Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

**CRUEGER DICKINSON LLC**
Charles Crueger
Benjanim Kaplan
4532 North Oakland Avenue
Whitefish Bay, WI 53211
Tel: (414) 210-3868

**JORDAN LEWIS, P.A.**
Jordan Lewis (admitted  *pro hac*)
jordan@jml-lawfirm.com
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel: (954) 616-8995
Fax: (954) 206-0374

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court this 17th day of October, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

/s/ Robert R. Sparks
Robert R. Sparks (0073573)