**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| DANIELLE FORMAN, et al., | : | Case No. 1:19-cv-613 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| TRIHEALTH, INC., and the TRIHEALTH | : | |
| 401(K) RETIREMENT SAVINGS PLAN | : | |
| RETIREMENT COMMITTEE, | : | |
| | : | |
| Defendants. | : | |

---

**ORDER GRANTING DEFENDANT TRIHEALTH, INC.'S MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT (DOC. 20)**

---

This case is before the Court on Defendant TriHealth, Inc.'s Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Doc. 20). Plaintiffs filed their Response in Opposition (Doc. 22), to which Defendant filed a Reply (Doc. 24). Subsequently, the parties filed numerous Notices of Supplemental Authority (Docs. 27, 28, 29, 31, 32, 33, 36, 38, 39, 40) for the Court's consideration. This matter is ripe for the Court's review.

For the reasons below, Defendants' Motion is **GRANTED**. While the Court recognizes the request for oral argument, pursuant to Local Rule 7.1(b), the Court does not believe hearing oral argument would be helpful in resolving this motion, and so it declines to do so.

**FACTS**

Plaintiffs contend that Defendants TriHealth, Inc. and the TriHealth 401(k)

Retirement Savings Plan Retirement Committee (collectively, "Defendants" or "TriHealth") breached their duties of prudence and loyalty to Plaintiffs in administering their retirement savings plan (the "Plan"), a defined contribution plan.   The Plan is sizeable, having more than 10,000 participants since 2013.  (Am. Compl., Doc. 15, ¶ 26.) In 2013, its assets exceeded $100 million, and in 2017, its assets exceeded $457 million. (*Id.*)  The Plan offered "about 25 different investment choices to its participants."  (*Id.*)

According to Plaintiffs, Defendants breached their fiduciary duties in two ways: permitting the Plan to incur high administrative fees and offering and failing to remove underperforming funds with higher fees when there were other, similar funds that charged lower fees and achieved higher returns.  (*Id.* at ¶ 4.)  Indeed, Plaintiffs allege that "[f]or every year between 2013 and 2017, the administrative fees charged to Plan participants are greater than the fees of more than 90 percent of comparable 401(k) plans, when fees are calculated as cost per participant or when fees are calculated as a percent of total assets."  (*Id.*)  Plaintiffs base this allegation on a benchmarking analysis used to analyze the fees over the identified period.  (*Id.* at ¶¶ 28-29.)  Plaintiffs alleged that the Plan's fees were "excessive when compared with other comparable 401K plans offered by other sponsors that had similar numbers of plan participants, and similar amounts of money under management."  (*Id.* at ¶ 27.)  These excessive fees thus led to lower net returns as compared to other comparable 401K plans.  (*Id.*)  Plaintiffs argued that the Plan's fees could have been reduced many times by simply "electing a different share class offered by the same issuer, or substantially identical fund from a different issuer. . . ."  (*Id.* at ¶ 43.)

2

Plaintiffs initially challenge seventeen of the mutual funds offered in the Plan. (*Id.* at ¶ 31.) According to Plaintiffs, the issuers of these seventeen mutual funds "offered different share classes that charged lower fees, and had materially better rates of return. The holders of different share classes held the same investments, and were subject to the same restrictions concerning deposits and withdrawals." (*Id.*) Indeed, Plaintiffs allege the "only difference between share classes was that the lower-cost share classes were available only to Plans that had larger investments—but in all cases, [the Plan] with more than $200 million in assets, was large enough to qualify for the lower cost share class." (*Id.*) Plaintiffs included a chart showing the seventeen fund and share classes, the fee (measured by basis points), and the three-year annualized return as compared with the "Lower Cost Available Share Class," its fees, and three-year annualized returns. (*Id.* at ¶ 31.) This chart reflects that the Plan's fee was higher for each fund than the "lower cost" fund, and similarly shows that the Plan's three-year annualized return was less than the "lower cost" fund—by less than one percent, and for many, by less than half a percent. (*Id.*) It is not clear in the chart precisely which years are included in this three-year annualized number, and it also does not identify the annual returns in any way. (*Id.*)

Plaintiffs continue that the remaining shares of the Plan's investment funds "were materially more expensive, and the fees' net return materially worse, than available alternatives in the same investment style." (*Id.* at ¶ 33.) This chart similarly reflects that the Plan's fee was higher for each fund than the "lower cost" fund, and similarly shows that the Plan's three-year annualized return was less than the identified "lower cost" fund—by no more than just over two percentage points for two funds and less than one

3

percentage point for most.  (*Id.* at ¶ 33.)

Plaintiffs contend they had "no knowledge of defendant's process for selecting investments and monitoring them to ensure they remained prudent.  Plaintiffs also had no knowledge of how the fees charged to and paid by TriHealth Plan participants compared to any other funds." (*id.* at ¶ 34.)  Plaintiffs also had no information pertaining to less expensive and better-performing investment options Defendants did not offer, as Defendants did not provide any "comparative information to permit Plaintiffs to evaluate Defendants' investment options." (*Id.*)

Thus, according to Plaintiffs, "[b]y selecting and retaining the Plan's unreasonably expensive cost investments while failing to adequately investigate the use of lower cost share classes, offered by the same investment companies, or superior, lower-cost mutual funds from other fund companies that were readily available to the Plan," Plaintiffs lost millions of dollars "through unreasonable fees and poorly performing investments." (*Id.* at ¶ 35.) Plaintiffs further allege that Defendants:

> failed to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's investments and fees in comparison to other investment options.  Defendants selected and retained for years as Plan investment options mutual funds with high expenses relative to other investment options that were readily available to the Plan at all relevant times.

(*Id.* at ¶ 62.)  Finally, Plaintiffs maintain that Defendants:

> Failed to engage in a prudent process for monitoring the Plan's investments and removing imprudent ones within a reasonable period.  This resulted in the Plan continuing to offer unreasonably expensive funds and share classes compared to equivalent and/or comparable low-cost alternatives that were available to the Plan.  Through these actions and omissions, Defendants failed to discharge its duties with respect to the Plan in

4

violation of its fiduciary duty of loyalty under 29 USC 1104(a)(1)(A)."

(*Id.* at ¶ 63.)

## LAW

Federal Rule of Civil Procedure 12(b)(6) allows, upon motion, the dismissal of a complaint "for failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss tests the plaintiffs' cause of action as stated in the complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court accepts the complaint's factual allegations as true. It is not bound to do the same for a complaint's legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, surviving a motion to dismiss is a matter of pleading sufficient factual content. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 683 (2009)).

A claim for relief must be "plausible on its face." *Iqbal,* 556 U.S. at 678. That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield*, 727 F.3d at 502. A complaint that lacks such plausibility warrants dismissal. *Iqbal,* 556 U.S. at 678. While "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

## ANALYSIS

Defendants move to dismiss the Amended Complaint for failure to state a claim, making two arguments. First, Defendants argue that Plaintiffs' claims are barred by the

applicable statute of limitations, and second, that Plaintiffs failed to adequately plead their breach of the duty of prudence and loyalty claims such that dismissal is required.

**A.     The Extraneous Documents Filed by Defendants**

Before addressing Defendants' substantive arguments, the Court must first address whether it can consider the extraneous documents filed by Defendants in support of their Motion to Dismiss, which they contend are properly before the Court because the documents are either referenced in the Complaint or integral to Plaintiffs' claims. Plaintiffs disagree.

Defendants rely on these extraneous documents primarily to support their argument that Plaintiffs' claims are barred by the statute of limitations. However, for the reasons set forth below, these documents are no longer relevant to that analysis. (*See* Section B below.) Although Defendants cite to Exhibits G and H in support of their failure to state a claim argument, they do so in support of the proposition that Defendants documented and disclosed their decision-making process to Plaintiffs. (*See* Motion to Dismiss, Doc. 20, Pg. ID 1247.) But, at this juncture, it is not this Court's role to bless the Plan or Defendants' processes associated with it. (*See* Section C below.) As such, this argument is not relevant to the adjudication of Defendants' arguments, and the Court need not consider them.

Accordingly, the Court has decided this Motion without consideration of these extraneous documents and thus need not decide whether such documents are properly

before the Court.[1]

**B.    Statute of Limitations**

Defendants' first argument is that Plaintiffs' claim is time-barred.  ERISA requires

a plaintiff to file his breach of fiduciary duty claim the earlier of:

> (1) six years after
>
>> (A) the date of the last action which constituted a part of the breach or violation, or
>>
>> (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

29 U.S.C. § 1113.

Defendants argue that Plaintiffs' claims are time-barred under the three-year

statute of limitations of subsection (2) because Plaintiffs had "actual knowledge" of the

Plan's offerings, performance, and fees—the "relevant facts and information supporting

their claims"—since at least March 2013.  (Motion to Dismiss, Doc. 20, Pg. ID 1243.)  In

support of their argument, Defendants rely on the mandatory disclosures attached to

their Motion to Dismiss, and they rely primarily on *Brown v. Owens Corning Inv. Review

Comm.*, 622 F.3d 564 (6th Cir. 2010), *abrogated by Intel Corp. Inv. Policy Comm. v. Sulyma*,

140 S. Ct. 768 (2020), to argue that Defendants' disclosure of this information is sufficient

---

[1] The Court recognizes Plaintiffs' request that the Court "have the clerk remove Plaintiffs' private and confidential information from the record." (Memo in Opp., Doc. 22, Pg. ID 2195.)  However, Plaintiffs do not explain precisely which information is allegedly private and confidential and how that information falls within Federal Rule of Civil Procedure 5.2.  To the extent Plaintiffs remain concerned that Defendants' filing fails to comply with Rule 5.2, and the parties cannot work together to resolve these concerns, the Court would entertain a motion directed to this issue.

7

to impart "actual knowledge" on Plaintiffs for statute of limitations purposes. Defendants argue that whether Plaintiffs actually reviewed these disclosures is irrelevant to the issue of "actual knowledge."

However, during the pendency of this motion, the Supreme Court decided *Intel Corporation Investment Policy Committee v. Sulyma*, 140 S. Ct. 768 (2020), which analyzed the definition of "actual knowledge" and the requisite standard of proof to trigger ERISA's three-year limitations period.   In that case, the Supreme Court specifically provided that:

> § 1113(2) requires more than evidence of disclosure alone.  That all relevant information was disclosed to the plaintiff is no doubt relevant in judging whether he gained knowledge of that information. . . . To meet § 1113(2)'s 'actual knowledge' requirement, however, the plaintiff must in fact have become aware of that information.

*Id.* at 777.

Defendants do not argue that Plaintiffs were "in fact . . . aware of that information."  *See id.*  Nothing in the Amended Complaint reflects Plaintiffs' receipt or review of any disclosures.  And Defendants do not contend Plaintiffs actually reviewed the disclosures.  Indeed, Defendants base their arguments solely on the disclosure being sufficient to establish actual knowledge.  (*See* Motion to Dismiss, Doc. 20, Pg. ID 1243-44) (arguing that relevant information was "disclosed to Plaintiffs"; "[a]dditional information was also made available to them").  But *Sulyma* makes clear that disclosure is insufficient to satisfy the "actual knowledge" requirement—a defendant must show that a plaintiff was actually aware of that relevant information.  *See Sulyma*, 140 S. Ct. at 777; *see also McGinnes v. FirstGroup Am., Inc.*, No. 1:18-cv-326, 2021 WL 1056789, at *6 (S.D.

Ohio Mar. 18, 2021).

Because statute of limitations is an affirmative defense, thus placing the burden of proof and persuasion on a defendant, award of judgment on this basis is generally inappropriate at the motion to dismiss stage. *See Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013). Here, Defendants have not argued, nor do the pleadings show, that Plaintiffs were actually aware of the information allegedly disclosed to them. Accordingly, at this preliminary juncture, the Court cannot conclude that Plaintiffs' claims are barred by § 1113(2).

**C.    Failure to State a Claim**

Defendants next argue that the Court should dismiss Plaintiffs' Amended Complaint because Plaintiffs have not alleged sufficient facts to plausibly state a claim for which they would be entitled to relief. Plaintiffs allege that Defendants breached their duty of prudence and their duty of loyalty. The Court will address these in order.

**1.    Duty of Prudence**

To state a claim for breach of the duty of prudence, a plaintiff must allege (1) that defendants were fiduciaries of the plan; (2) they breached their duty through acts or omissions; and (3) harm resulted from the breach.[2] *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). ERISA imposes a duty of prudence on plan fiduciaries, requiring the fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar

---

[2] In their Motion, Defendants challenge only whether Plaintiffs sufficiently alleged a breach of Defendants' fiduciary duties, and so the Court addresses only this prong of the analysis.

with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The Supreme Court has recognized that a prudent fiduciary has a continuing duty to monitor investments and remove imprudent ones, although it has not defined the scope of that duty. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015).

"The test for determining whether a fiduciary has satisfied his duty of prudence is whether the fiduciary, at the time he engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061 (M.D. Tenn. 2018) (citing *Pfeil v. State St. Bank and Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015)). "Courts must 'focus . . . on whether the fiduciary engaged in a reasoned decision [-] making process, consistent with that of a prudent man acting in [a] like capacity.'" *Stark v. Keycorp*, No. 1:20-CV-01254, 2021 WL 1758269, at *5 (N.D. Ohio May 4, 2021) (quoting *Pfeil*, 806 F.3d at 384). Thus, the breach analysis must focus on the process in which the fiduciary engaged in either selecting or monitoring the investment, not the performance of the investment. *See id.*; *see also McGinnes*, 2021 WL 1056789, at *8.

That said, given the early stage of a motion to dismiss, and a plaintiff's general lack of inside information as to a defendant's decision-making processes without the benefit of discovery, "[e]ven when the alleged facts do not directly address[] the process by which the Plan was managed, a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed." *Stark*, 2021 WL

1758269, at *5 (internal quotes omitted).

Plaintiffs' Amended Complaint alleges Defendants breached their duty of prudence by: (1) permitting the Plan to incur unreasonably high administrative fees and (2) offering underperforming funds with high fees when less expensive, better performing funds were available. The Court will address these in turn.

>        a.    **Administrative Fees**

Plaintiffs have failed to assert sufficient allegations to support their claim that Defendants breached their duty of prudence by permitting the Plan to incur allegedly excessive administrative fees. They have simply not provided the Court with sufficient factual allegations to permit an inference of imprudence.

In support of their claim, Plaintiffs assert that: "[f]or every year between 2013 and 2017, the administrative fees charged to Plan participants are greater than the fees of more than 90 percent of comparable 401(k) plans, when fees are calculated as cost per participant or when fees are calculated as a percent of total assets," (Am. Compl., Doc. 15., ¶ 4), and that the Plan's fees were "excessive when compared with other comparable 401K plans offered by other sponsors that had similar numbers of plan participants, and similar amounts of money under management." (*Id.* at ¶ 27.)

At its core, the Amended Complaint alleges only that the administrative fees were high—not that they were unjustifiably (or imprudently) high. Plaintiffs did not describe what services the Plan received in exchange for these administrative fees or what services the "comparable 401(k) plans" received in exchange for their less costly fees. The fact that the 401(k) plans are "comparable" is not sufficient. While the size and structure of the

plans are relevant to the reasonableness of the administrative fees, similarly relevant is the types and scope of the services offered in exchange for those administrative fees and whether those services are sufficiently similar such that the higher administrative fee amount is unjustified and thus imprudent. *See Wehner v. Genentech, Inc.*, No. 20cv06894-WHO, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (recognizing that federal courts in California "have required plaintiffs to plead that administrative fees are excessive in relation to the specific services the recordkeeper provided to the specific plan at issue"); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009)(concluding that plaintiffs failed to plausibly allege the fiduciaries paid excessive fees when they "fail[ed] to allege that the fees were excessive relative to the services rendered"). Nor did Plaintiffs identify any less costly alternatives (either vendors or service options) available to Defendants. *Cf. Stark*, 2021 WL 1758269, at *6 (concluding the plaintiffs' allegations were sufficient to support their claim when they identified potential vendors who would provide the same services at a lower cost). Nor did Plaintiffs identify what a reasonable cost would have been based on the services offered to the Plan and how much the Plan actually paid. *Cf. Disselkamp v. Norton Healthcare*, No. 3:18CV00048-GNS, 2019 WL 3536038, at *9-10 (W. D. Ky. Aug. 2, 2019) (concluding the plaintiffs asserted sufficient allegations to support a breach of the duty of prudence when they alleged a reasonable administrative cost based on market information, the actual costs paid by the plan, and that the defendants failed to engage in any competitive bidding process).

Without more, the Court cannot presume that the Plan's administrative fees are unjustifiably high or that Defendants imprudently permitted the Plan to incur these fees.

*See Wehner*, 2021 WL 507599, at *6 (concluding that plaintiff failed to provide sufficient allegations as to why the comparator provided an "accurate comparison," noting that there was no indication how plaintiff even calculated the per-participant fees for recordkeeping and administrative costs). Plaintiff has the burden to plead facts that create more than a "sheer possibility that [the Plan's fiduciaries] ha[ve] acted unlawfully" such that Plaintiffs' claim is plausible and thus survives a motion to dismiss. *Iqbal*, 556 U.S. at 678. Although the question of "whether it was imprudent to pay a particular amount of recordkeeping fees does involve questions of fact," *White v. Chevron Corp.*, No. 16cv0793-PJH, 2016 WL 45002808, at * 14 (N.D. Cal. Aug. 29, 2016), which generally should not be resolved on a motion to dismiss, Plaintiffs have failed to allege facts that permit this Court to "infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679. Such allegations are thus insufficient to survive a motion to dismiss.

### b. Allegedly Underperforming Funds With High Fees

Plaintiffs also allege that the Defendants breached their duty of prudence by selecting, maintaining, and failing to remove from the Plan's offering certain funds that allegedly underperformed and had higher fees than other funds.

As noted above, when evaluating an alleged breach of an ERISA fiduciary, while "plaintiffs need not plead facts 'relating directly to the methods employed by the ERISA fiduciary,' they must 'allege[] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'" *Stark*, 2021 WL 1758269, at *10 (quoting *Pension Benefit Guar. Corp., on behalf of St. Vincent Catholic Med. Ctr. Ret. Plan et al. v. Morgan Stanley Inv. Mgmt., Inc.*,

712 F.3d 705, 718 (2d Cir. 2013)); *see also Birse v. Centurylink, Inc.*, No. 17cv02892-CMA-NYW, 2019 WL 1292861, at *4 (D. Colo. Mar. 20, 2019) ("[T]o plausibly establish a claim for a breach of duty to monitor, a plaintiff must allege facts plausibly establishing that no reasonable fiduciary would have maintained the investment.")

When raising a challenge "investment-by-investment," a plaintiff cannot merely allege underperformance or high fees. *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020). Rather a complaint "must provide a sound basis for comparison—a meaningful benchmark." *Id.* (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)). "Simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks. . . ." *Anderson v. Intel Corp.*, No. 19cv04618-LHK, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021). Without sufficient factual allegations permitting the challenged fund's characteristics and performance to be compared to a "meaningful benchmark," a plaintiff fails to allege a plausible claim that a defendant breached its fiduciary duty. *See id.*; *see also Wehner*, 2021 WL 507599, at *9; *White*, 2016 WL 45002808, at *12.

And, simply alleging that a fund underperformed is insufficient. While "allegations of consistent, ten-year underperformance may support a duty of prudence claim," such "underperformance must be substantial." *Patterson v. Morgan Stanley*, Case No. 16cv6568(RJS), 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019). Courts have previously held that less than 1% or just over 2% differences in performance between the challenged fund and the alleged benchmark was not sufficient to create a plausible inference of imprudence. *See id.* (concluding that a less 1% difference was insufficient to

14

state a claim for relief); *Birse*, 2019 WL 1292861, at *5 (finding that a fund's underperformance of 2.11% when compared to a benchmark and, when replaced with the proposed fund would have increased the return by only 5%, was insufficient to state a claim).

Here, Plaintiffs failed to assert sufficient facts to plausibly allege that Defendants breached their fiduciary duties because they failed to (1) sufficiently describe a comparable benchmark and (2) sufficiently allege actionable underperformance.

***The Benchmark***. Plaintiffs have not actually identified a meaningful benchmark. Sure, they identified several funds that they characterize as "the lower-cost share classes" and state that the only difference was the fees—but they offer no further information to permit the Court to conclude that the funds were, in fact, similar enough to permit an "apples-to-apples" comparison.[3] *See Wehner*, 2021 WL 507599, at *9 (noting that plaintiff "cannot dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity"); *Patterson*, 2019 WL 4934834, at *12 (rejecting a duty of prudence claim when the plaintiffs conclusory allegations assert that the purported benchmarking fund was "comparable" "without ever explaining how or *why* the funds were comparable") (emphasis in original). They have offered no allegations regarding the funds, their investment strategy, the services to the funds in exchange for the fees, etc. Because Plaintiffs have failed to plead facts sufficient to show

---

[3] To the extent Plaintiffs are reticent to identify the funds in more detail because their argument is, in fact, that Defendants were imprudent for failing to offer institutional class shares in place of retail class shares, numerous courts have rejected this theory. *See Loomis v. Exelon*, 658 F.3d 667, 670-72 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *White*, 2016 WL 45002808, at *10-11.

a meaningful benchmark, their claim is not plausible. *See Stark*, 2021 WL 1758269, at *12 (concluding the plaintiffs failed to identify a meaningful benchmark when they failed to demonstrate that the alleged comparator funds had the same investment strategy, even though there were some alleged similarities, nor did they provide sufficient comparator information pertaining to fees charged).

  ***The Alleged Underperformance.*** Here, even if, however, Plaintiffs provided sufficient factual allegations to describe a meaningful benchmark, Plaintiffs have failed to plausibly allege that Defendants acted imprudently because the variances identified by Plaintiffs are simply too small. First, in the initial table, the underperformance Plaintiffs identified was less than 1%, with every fund except one being less than ½% difference in performance between funds. (*See* Am. Compl., Doc. 15, ¶ 31.) In the second table, the underperformance variance is similarly small—under 1% for all but two funds, with those two being just over 2%. (*See id.* at ¶ 33.)

  The fee variances are similarly small, ranging from .01%-.74%, with all but one fund having a variance of less than .5%. (*See id.* at ¶¶ 31, 33.) The fee range itself is from .03-.97%. (*See id.*) Courts have routinely rejected challenges to fee ranges like this. *See Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds by* 135 S. Ct. 1823 (affirming the reasonableness of fees that "varied from .03% to 2%"); *Loomis*, 658 F.3d at 669-72 (affirming dismissal of an excessive fee claim where "expense ratios rang[ed] from .03%-.96%"); *Renfro v. Unisys*, 671 F.3d 314, 326-28 (3d Cir. 2011) (affirming dismissal of an excessive fee claim where the fees "ranged from .1%-1.21%"); *Hecker*, 556 F.3d at 586 (affirming dismissal of an excessive fee claim where the fees ranged from .07%

to just over 1%). While the fact that other courts have previously approved such fee ranges as reasonable does not per se insulate the fee range in this case from challenge, in the absence of a meaningful benchmark demonstrating the unreasonableness of the fees, these cases bolster the Court's conclusion that Plaintiffs' allegations do not plausibly state a claim for imprudence.

Thus, these variances alleged by Plaintiffs are simply too small to raise a plausible breach of the fiduciary duty claim against Defendants, as their can be no inference that Defendants' process was flawed. *See Stark*, 2021 WL 1758269, *10-11 (finding that ½% difference failed to support a prudence challenge, noting that "Plaintiffs have not identified any cases in which a court found that the plaintiff sufficiently pled a claim based on such a small disparity in performance"); *Patterson*, 2019 WL 4934834, at *10 (finding a difference of less than 1% to be "certainly insubstantial" and inadequate to sustain a prudence claim); *see also White*, 2016 WL 4502808, at *11 (rejecting a challenge that including retail class funds instead of institutional class funds was imprudent, noting that it was based on the assumption that the mere inclusion of a higher expense ratio fund violated the duty of prudence, which was insufficient); *Cf. Karpik v. Huntington Bancshares*, No. 2:17cv1153, 2019 WL 7482134, *5-6 (S.D. Ohio Sept. 26, 2019) (finding that plaintiffs stated a claim for relief when the parties did not dispute that the fund "dramatically underperformed the market in the years preceding 2016"). Indeed, these courts and others have repeatedly recognized that ERISA does not require fiduciaries to "scour the market to find and offer the cheapest possible funds (which might, of course, be plagued by other problems)." *Hecker*, 556 F.3d at 586.

Moreover, Plaintiffs frame their variance figures within a "3-year annualized return." This presents two problems. First, it does not identify the funds' performance on a yearly basis. Yearly performance is relevant, especially if a fund outperformed the alleged benchmark in any year. *See Patterson*, 2019 WL 4934834, at *11 (noting that the challenged fund outperformed the purported benchmark fund one year during the challenged period and thus concluding that simple underperformance could not support the claim). Moreover, because the Court cannot review the yearly figures, which is how the data would presumably be presented to and considered by Defendants, it cannot infer that Defendants' process is flawed from the perspective of the "prudent man" standard. (*See* Memo in Opp., Doc. 22, Pg. ID 2202) (arguing that Defendants made the decision "year-after-year, to retain higher-cost share classes. . . ."; arguing that Defendants failed to prudently monitor investments based on their "persistent pattern over the years").

Second, even assuming consistent underperformance in all three years, several courts have recognized that a three-year period is too short to support a breach of fiduciary duty claim. *See Wehner*, 2021 WL 507599, at *9 (concluding a claim based on three and five-year periods is insufficient to state a claim for relief); *Davis v. Salesforce.com, Inc.*, No. 20cv01753, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (concluding that allegations "based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence"); *Patterson*, 2019 WL 4934834, at *10 (noting that "consistent, ten-year underperformance may support a duty of prudence claim" if the underperformance is "substantial"). It is not per se imprudent to retain underperforming funds for a short period of time as part of a long-term investment strategy. *See Wehner*, 2021 WL 507599,

18

at *9; *see Patterson*, 2019 WL 4934834, at *11; *White*, 2016 WL 45002808, at *17.

In sum, Plaintiffs' allegations that the identified funds underperformed alleged "comparator" funds by such a slim margin "do not raise a plausible inference that a prudent fiduciary would have found [the Plan] to be so plainly risky as to render the investments in them imprudent." *See Patterson*, 2019 WL 4934834, at *10 (quoting *Leber v. Citigroup 401(K) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 14) (S.D.N.Y. 2015) (internal quotations omitted)). *See also Davis*, 960 F.3d at 486 (recognizing that fiduciaries are not required to pick either the "best performing" or the "lowest-cost" fund and affirming the dismissal of the complaint for failing to "connect the dots in a way that creates an inference of imprudence").

To be clear, the Court declines the invitation to wholesale bless the Plan or Defendants' processes.[4]  The Court's ruling is premised on Plaintiffs' failure to plead allegations that permit the Court to plausibly infer that Defendants have breached their fiduciary duty of prudence.  While the Court agrees that Defendants have a duty to monitor the Plan's investments and remove imprudent investments as Plaintiffs argue and the Supreme Court has recognized, *Tibble*, 135 S. Ct. 1828-29, Plaintiffs' Amended Complaint as it currently stands does not sufficiently allege a breach of this duty.

Similarly, while the Court acknowledges that the question of whether fees are "reasonable" is generally one of fact, *White*, 2016 WL 45002808, at * 14, a plaintiff must still plead sufficient factual allegations to infer the fees as pled are, in fact, unreasonable.

_____

[4] Indeed, while Defendants argued that they disclosed their decision-making processes to Plaintiffs contemporaneously with their actions, that is irrelevant to the analysis as to whether the process was prudent.  Accordingly, the contents of those disclosures are irrelevant and not considered.

*See Meiners*, 898 F.3d at 823 ("[T]he existence of a cheaper fund does not mean that a particular fund is too expensive in the *market generally* or that it is otherwise an imprudent choice."). Here, Plaintiffs have not provided sufficient facts to draw such an inference here because they do not sufficiently describe comparators or alternative available options such that the Court can, through an apples-to-apples comparison, infer imprudence. Plaintiffs' reliance on the series of *Tibble* cases following the Supreme Court's decision are not dispositive, as Plaintiffs seem to suggest, because those cases were in a procedurally different posture and proceeding on a record containing evidence, rather than mere allegations. Here, the Court is limited to evaluating Plaintiffs' allegations as made in the Amended Complaint. Moreover, while *Tibble* acknowledged the duty to monitor and remove imprudent investments, it did not define the scope of that duty, and so its relevance in this context is limited.

Thus, Plaintiffs have failed to identify a meaningful benchmark and have not alleged sufficient underperformance to demonstrate that the funds they have identified were imprudently retained by Defendants. As described above, the facts as plead do not permit an inference supporting a plausible claim that Defendants behaved imprudently.

### 2. Duty of Loyalty Claim

"To state a loyalty-based claim under ERISA, a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts." *McCool v. AHS Mgmt. Co.*, No. 3:19cv01158, 2021 WL 826756, at *4 (M.D. Tenn. Mar. 4, 2021) (quoting *Cassell*, 285 F. Supp. 3d at 1062). "To implicate the concept of loyalty, a plaintiff must allege plausible facts supporting an inference that a fiduciary acted for the purpose of providing

benefits to itself or some third party." *Id.* It is plainly insufficient to "merely reincorporate alleged breaches of the duty of prudence as disloyal acts." *Disselkamp*, 2019 WL 3536038, at *10. Thus, "[w]hen claims do not support an inference that the defendants' actions were for the purpose of providing benefits to themselves or someone else and simply had that incidental effect, loyalty claims should be dismissed." *Cassell*, 285 F. Supp. 3d at 1062 (internal citations omitted); *see also Patterson*, 2019 WL 4934834, at *12 (dismissing a duty of loyalty claim when plaintiffs failed to allege any facts suggesting an improper purpose in permitting the high fees and the facts largely overlapped the duty of prudence claim).

Here, Plaintiffs fail to sufficiently allege a breach of loyalty claim. They do not assert any allegations of self-dealing, nor do they sufficiently allege facts to show that Defendants' actions were for their own benefit, or for the benefit of someone else other than the beneficiaries. Indeed, their allegations pertaining to the breach of the duty of loyalty primarily reincorporate their breach of the duty of prudence allegations. This is plainly insufficient.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (Doc. 20) is **GRANTED**. The facts as pled do not raise a plausible inference that Defendants breached their fiduciary duties.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND